Mdm. Clerk, would you please call the docket for this morning? The following cases are scheduled for argument this morning, Tuesday, Nov. 13, 2018. Case No. 18-1115, District of North Dakota, Association of Equipment Manufacturers, et al. v. The Hon. Doug Burgum, Governor of the State of North Dakota, etc., et al. Very well. Thank you, Mdm. Clerk. Mr. Allen, we'll hear from you. Good morning, Your Honors. May it please the Court. Jason Allen, on behalf of the appellant, the North Dakota Implement Dealers Association. And, Your Honors, I also have the privilege of handling the entire argument this morning on behalf of both appellants. I have my colleague, Mr. J.P. Dutch-Bialke, here with me on behalf of the State. As Your Honors are aware, we put in a request to split the argument, which was denied, and so I will be handling the entire argument due to some health concerns from Mr. Bialke. Your Honors, also, just before I get into the substance of the argument, I would like to note that I informed the clerk prior to the argument that I would like to reserve five minutes for rebuttal. Well, you'll have to watch your own time. We don't manage that other than to give you the lights. Yes, Your Honor. Okay. Your Honors, Senate Bill 2289 was a thoroughly vetted and almost unanimously passed piece of legislation that protects against farm equipment manufacturer abuses, most notably terminations of dealerships in small and rural areas, and also benefits the state's largest industry, agriculture, or agribusiness. The North Dakota legislature is comprised of almost 25% farmers and ranchers. The record reflects that those members understood the importance of the legislation, and Senate Bill 2289 was subjected to an extended and almost unprecedented committee hearing process. There were seven hearings in total. Six to seven hours of testimony was taken. The members of those committees, the House and Senate Agriculture Committee, are comprised of almost 50% farmers and ranchers. Those members understood the importance of the legislation to protect the distribution system in North Dakota's largest industry. The official legislative history that was taken from the committee process is reflected in 137 pages. It reflects that these farmer and rancher legislatures were concerned with the abuse of manufacturer practices. It's replete with testimony regarding terminations in small towns that cost farmers more money. Counsel, what's the significance? Well, let me ask you this preliminary question. You're only appealing the district court's contracts clause determination. Is that correct? Yes, Your Honor. What's the significance of leaving the district court's determination under the Federal Arbitration Act intact? The significance would be that that piece of the legislation would be severable from the remainder of the bill. Well, then, one of the things I wanted to ask you about, there's a case, MKB Management, which is a 2015 case of this court. And in footnote six, we said the following. Although the North Dakota Century Code contains a presumptive severability clause, we declined to consider whether the heartbeat testing requirement is severable from its abortion restriction because the state has not argued severability. So that's a North Dakota case that suggests that the state has to argue severability. And I did not see the argument about severability in your opening brief. Am I wrong about that? Your Honor, I do not know if you are wrong about that. I know that we absolutely addressed the issue at a minimum in our reply brief. I do not know if it was raised in the initial brief. And that would be the position is to the extent that this court finds that there is not a substantial likelihood of success on the contracts clause, that the court committed either a factual or legal error in that, that then the injunction would need to be narrowly tailored to only the piece of legislation that was violative. And that would be capable because the Arbitration Act piece is not integral to the remainder of the bill. It doesn't address abusive practices. It doesn't address all of the other things that were in those lists relating directly to the relationship between manufacturers and dealers. It was simply related to the process as to how to bring about a claim. Would that be something that we need to send back to the district court if we agree with you for the district court to modify its injunction? Or is that something we could do here? I believe it would be appropriate to request the district court to modify the injunction. Yes, Your Honor. Okay. Your Honor, the members of the House and Senate Agriculture Committee very clearly understood what the bill was designed to do and the purpose of the bill. Representative Kieffert, who is a farmer and identified as a farmer during the hearing, stated, to help non-farmers understand, we buy equipment because we can get the service in parts. Our area dealership closed and it costs more to get service. That's a farmer on the committee that heard the bill speaking to a termination in his area that cost his business and resulted in increased costs. That legislative history was virtually disregarded by the district court. Instead, the district court focused on four words from Senator Klein's floor testimony, leveling the playing field. And Your Honors have read those four words over and over in the briefing process. Leveling the playing field. Leveling the playing field. Leveling the playing field. Those weren't Senator Klein's only four words. They were taken out of context. As the Supreme Court stated in Weinberger v. Rossi, that taken out of context, this remark is certainly supportive of a respondent's position. In context, however, it is not. I'd just like to read to you the following sentence from Senator Klein that includes the four words. Senator Klein says, we would like, or our hope is that we will give the same level playing field to our implement dealers as we did to our auto dealers. He then continues, given the current farm economy, not only are our farmers struggling, but also our farm equipment dealers. We need to do what we can to help protect, protect one of the most vital components of our ag, i.e., agriculture economy. Both of our major farm equipment organization, or excuse me, both of our major farm organizations came in in support of the bill. Those were his words, not just the four words of leveling the playing field. Counsel, what do we do with the fact there's the famous quote from Judge Leventhal that looking at legislative history is like looking over a crowd and picking out your friends. And both sides have their sort of pet legislative history quotes, some from floor statements, some from other aspects, testimony. What do we do when there's conflicting testimony? I think you would concede, wouldn't you, that there's some conflicting legislative history. There's some things that suggest this is protectionist. Some things suggest this is to protect the farmers and the economy in North Dakota. What do we do with that? Yes, Your Honor. I think I'd like to try to take, unpack that in two parts. Sure. First of all, undoubtedly, the legislative history is not a codification of the legislative intent. It's not that clear, because if there was codification, we wouldn't be looking at the legislative history. And so when you're wading through that, the test and the analysis would be, is there anything in the record to reflect a consideration by the legislature of a broader purpose, not simply to look at one narrow class of beneficiaries? So is there anything in the record that reflects that the legislature considered a broader purpose? There are obviously other statements, including statements from Appalee's detractors of the bill as to why the bill would be unlawful, but that goes to the wisdom of the statute. So it's not a weighing exercise where the court sits here and decides whether there was enough on one side to pass the bill or on the other. The court is simply looking to whether or not there was evidence in the legislative record to support these other purposes. So it's okay, then, if the law is protectionist and there's evidence that the law is protecting a particular industry, so long as there's a broader societal purpose also? Absolutely, Your Honor, and that's what this court decided in Janclow. Janclow is incredibly distinguishable from this case. Most notably, this court was faced in Janclow with an evidentiary stipulation from the state that leveling the playing field was the purpose. But this court didn't stop there. It then continued to analyze the legislative history in detail, and here are the four things that the court looked for in Janclow, which were not present in Janclow and which are present here. Evidence of abuse. So in Janclow, the state argued that the bill was passed to protect against manufacturer abuses such as termination. The court scoured the legislative record. There was no evidence whatsoever that manufacturer terminations had taken place. Your Honors, here we have multiple statements from representatives on the committees who were farmers who stated that they have lost dealers in their area and terminations have occurred. It's undisputed. The second item, there was a stipulation as to purpose. There's been no stipulation here from the state or the interveners that that is the sole purpose. The third item that the court identified as a problem in Janclow in the legislative history, the scant legislative history is how they described it, there was no evidence of participation of anybody but the manufacturers and the dealers. Here, Your Honor, we have five separate agriculture associations that came in in support of this bill, and they said the North Dakota Agriculture Association stated, quote, we look at SB 2289 as a crop production advocate. Taken together, those agriculture associations represent roughly 90,000 farmers in the state of North Dakota. There would be absolutely no reason for those associations to participate in the committee process, stand up, provide testimony, go on the record, and advocate for a bill that they believe is a crop production bill if it does not actually benefit the farmers. Senate Bill 2289 ultimately ensures farmers continue to receive a level of service they need in order to be successful. That was the Farmers Union that stated that. That evidence was absent in Janclow. It is not absent here. And finally, to the initial question that got us on this line of discussion, Your Honor, in Janclow, there was a complete absence of any legislative history that showed other considerations. Here, there is ample evidence. Janclow asked, is there something or nothing? There was nothing. Here, we have a lot more than nothing. We have numerous statements, although some of those were rebutted by detractors of the bill, but we have numerous statements of other considerations and beneficiaries of the legislation. Your Honor. Do you think it's a subjective question or an objective question as to the purpose? Your Honor, respectfully, I would suggest that that question has already been answered by the North Dakota District Court and Farmers Union when it stated under an almost identical contracts clause challenge that the protection of the distribution scheme in the state of North Dakota, agriculture equipment distributors, is a legitimate purpose. And what the court recognized there is that the scheme is integral. Farmers, farm equipment dealers, and manufacturers all work together. Let me, I think my question wasn't very precise. What I mean is you're debating whether the purpose of this bill was X or Y, but do you think we're supposed to look at what the legislators subjectively had in mind, or do you think we're supposed to look at something that might be called objective as to what a reasonable legislator could have believed was the purpose of this? Yes, Your Honor. How are we supposed to approach the question? I think I understand the question better. Respectfully, Your Honor, I would suggest that the court is not sitting here to determine what was each legislator's intent in passing the bill. This is not a legislative history analysis that would be akin to when there's an ambiguous statute and you're seeking to determine what does a term mean and what do these legislators think a term means. The question here is whether there's any evidence in the record that they considered other purposes. Why is that the test? Where do you derive that from? From Janclo, Your Honor. The question in Janclo was whether there was evidence . . . Janclo said there wasn't in that case, and therefore the state lost, but it didn't necessarily say the opposite. If some legislator makes a comment to that effect that it solves the problem, did it? Your Honors, respectfully, I don't believe that the purpose here or the analysis here is to determine the subjective intent of the legislators. It is to determine whether what they considered, which is reflected on the record, is a legitimate purpose. So we're not determining the primary purpose of the bill. It's whether what they considered as reflected in the legislative record constitutes a legitimate purpose. And we know from Janclo and Farmers Union that benefiting the economy as a whole, benefiting farmers in rural areas, protecting the distribution scheme, because it is interrelated, are all legitimate purposes. In Janclo, the court stated that they would be compelled to uphold the act. If there was any evidence of those items being in the legislative record, the same analysis applies here. There is ample evidence in the legislative record of a desire to protect more than simply a single class of implement dealers. Your Honors, finally, I would like to note that the purpose . . . the purpose of the . . . the legitimate purpose of the bill is clear. However, we don't necessarily have to get there. Foreseeability is a threshold issue. And the district court erred in determining that this law was not foreseeable. This regulation in the Century Code has regulated the contracts between equipment manufacturers and dealers since 1937. It's amended the law at least ten times since then. It's expanded the law in each of those instances. This piece of the Century Code has survived two separate contracts clause challenges in which the law was applied retroactively. Perhaps most notably, Your Honor, two of the plaintiffs in this matter have contracts that were imminently foreseeable. CNH has nine contracts which are reflected in the record. There's a summary of their contract . . . excuse me . . . contracts and the terms and the contractual date. Nine contracts that post-date the enactment of the legislation. Post-date. It's not credible to suggest that they did not foresee this legislation when they entered into the contract after the legislation was passed. To quote this court from Branstad, the idea evidently is that if the party to the contract who is complaining could have seen it coming, it cannot claim that its expectations were disappointed. Similarly, the plaintiff, John Deere, every single one of its contracts post-date the in-person meetings that the dealers had with John Deere, explaining their concerns with the contracts and informing them that they would ask the legislature to look at this issue. Is foreseeability a question of law or a question of fact? Ultimately, the decision, excuse me, Your Honor, is a question of law. Obviously, the facts that underlie that analysis play into that. Here, I don't believe there are any facts in dispute. Well, the reason why I ask that is because, you know, there are some facts involved, which is, you know, some of the things you were talking about, the nine contracts, but also this is pretty burdensome legislation from the viewpoint of the manufacturers. And maybe they expected something. Maybe they expected some type of legislation based on the sit-down meetings that occurred. But maybe you could make an argument that they didn't expect this. And what's your response to that? My response would be that's respectfully it's not credible. They're going around the country bringing these lawsuits. They filed a lawsuit in New Hampshire on almost identical legislation. These are ultra-sophisticated companies that have, not individuals, departments devoted to tracking public policy and changes to that public policy. It's simply not a situation in which they can claim that they didn't have an idea that the law may be expanded. And finally, Your Honor, on the expansion of the statute, the statute was not expanded and created out of whole cloth. So the amendment did not address items that had never been addressed before. The amendment was largely and almost exclusively focused on those practices in which the manufacturers had found a loophole and to close the loophole. The simplest example would be previously in the law there was a prohibition on the manufacturers prohibiting dealers from purchasing equipment from other manufacturers. So the manufacturers couldn't prohibit the dealers from doing that. So what they did is they implemented an exclusivity or a separation requirement. They said, well, we can't keep you from ordering it, but you can't keep any of our products near theirs. It was a loophole. So the legislature and two or three different provisions in the bill closed that loophole. So while it looks like perhaps a large expansion as far as the number of lines on the page, all of these items related back to the prior legislation. Would you like to save any time for rebuttal? I would, Your Honors. If you don't have any additional questions, I will. Very well. Thank you for your argument. Mr. Lockerbie, we'll move to you. May it please the Court, Michael J. Lockerbie representing the plaintiffs in Appalese, the Association of Equipment Manufacturers and four manufacturers of farm equipment whose contracts the North Dakota legislature is trying to rewrite after the fact, AGCO, C&H, John Deere, and Kubota. The decision of the district court should be affirmed. Judge Hovland did not abuse his discretion by entering a preliminary injunction simply to preserve the status quo pending trial on the merits, which is currently scheduled to take place in May of next year. To the contrary, when Judge Hovland found that the manufacturers were likely to succeed on the merits of their contract clause challenge, he was following two of this court's leading precedents decided under the contract clause. The first, of course, was Branstad, in which this court affirmed the judgment of the district court, striking down an Iowa franchise statute under the contract clause. The second was Janklow, in which this court actually reversed, in large part, the district court's contract clause determination. The district court in South Dakota had found that there was a significant and legitimate public purpose to aid farmers. This court disagreed, finding that the actual purpose was to level the playing field for the benefit of dealers. It wasn't legislation intended to serve some broad social and economic objective. Factually, this case could not be more similar, and Senate Bill 2289 could not be more similar than the statutes at issue in Branstad and Janklow. They're third- It would be a little more similar if there were a stipulation that the purpose was only private. Well, there's pretty close to a stipulation. There's not a stipulation now after the fact. The position of NDDA now is sort of like the Wizard of Oz, pay no attention to the man behind the curtain. But NDDA, the Equipment Dealers Association, intervened in the district court because the equipment dealers said they had critical evidence of the bill's origin and purpose. And Judge Hovland allowed them to intervene to present that evidence. And, of course, at the preliminary injunction hearing, once the court found a substantial impairment of contracts, and that's a determination that the appellants haven't challenged, the burden shifted to the state and NDDA to come forward with evidence showing that there was some purpose other than leveling the playing field. What did they do? In the case of the state, it did not present any evidence at all at the preliminary injunction hearing. It made argument about one-sided unfair contracts. Purposes that Judge Hovland found were all different ways of saying the same thing, leveling the playing field. But you do have testimony here, unlike in Janklow, that suggests that there's a broader societal purpose. And I know you disagree with it. Protecting the small towns, ensuring economic growth for North Dakota, making sure that farmers within the state have a dealer close by that they can get their machines serviced, their tractors serviced, things like that. There is a little bit of testimony to that effect, but by and large, the testimony was from NDDA, equipment dealers themselves, and even the agricultural associations engaged in the log rolling mentioned leveling the playing field in their testimony. The one farmer who testified was testifying about her family's loss of an equipment dealership. Fortunately, the Supreme Court has made it easy for this court as to what the standard is. And the courts review it. Of course, this is not like Janklow, which was a summary judgment case. This is a preliminary injunction case. It's an abuse of discretion standard. Now, there is, with respect to findings of fact, a clearly erroneous standard. What the Supreme Court has said, and this is in Anderson v. City of Bessemer City, the court should affirm Judge Hovland's factual finding that Senate Bill 2289's primary purpose was to level the playing field. As long as, I'm quoting now, the district court's account of the evidence is plausible. And in terms of both quality and quantity, the evidence of this- What were you quoting from there? I'm quoting from Anderson v. City of Bessemer. Well, that's a factual, yeah. You're saying that it's a question of fact for the district court as to what the legislature's purpose was? That's what the appellees have argued in their brief, that that's a question of fact. In fact, in their reply- That's a new proposition that we would have to be adopting. Well, certainly, and I'm not saying the appellee's reply brief is gospel truth. Far from it. But they attributed, they said that the district court committed an error of fact by finding no substantial, no significant and legitimate public purpose. Whether it's a question of fact or a question of law, in terms of both quality and quantity, the evidence is overwhelming that the purpose was to level the playing field. When Indita had a chance to present evidence to the district court, it didn't even cite this so-called legislative history. It submitted a seven-page affidavit of its president that is rife with quotes about oppressive contracting practices, leveling the playing field. Judge Hovland rightly concluded that the purpose was to level the playing field. Now that we're before this court, the state and Indita are contending that this 137-page so-called committee minutes is in fact legislative history. It's nothing of the sort. It's not legislative history. It's not subject to the safeguards that a committee report from the U.S. Congress would have. It's not even like the legislative history at issue in the state of New Hampshire, which actually said what the purpose of the bill was, made findings, and by the way, also said that the purpose was to level the playing field, which, of course, under this court's precedent in Janclow, would be improper. What do we do if there's mixed purposes or a mixed motive? In other words, it seems to me I have no idea what the purpose of the legislature was, and there seems to be evidence that it was both leveling the playing field slash protectionist and protecting broader economic and societal interests dealing with farmers. But picking between the two seems very difficult, given the legislative record we have. And I know you think your legislative history is better, and I know they think their legislative history is better. What if we think that both are purposes? What does our case law tell us to do, or what would we do? In my opinion, with all due respect, is irrelevant, because it's what the Supreme Court and this court have previously said. And there's precedent from the Supreme Court, such as Corley v. United States, and other cases cited in our brief, and precedents of this court, including Southern Wine and Spirits, that a sponsor's statement to the full legislative body is compelling evidence of legislative intent. Here we have two statements to the legislative body. One of an actual sponsor, Senator Jerry Klein, who seconds before the bill was passed, said the four words that now the other side wants the court to disregard, level the playing field. And then, similarly, on the House side, Bernie Satrum, who was carrying the bill to the full legislature, talked about leveling the playing field. He didn't use those exact words, but substantively. But humor me here. Suppose we conclude that both sides have good legislative history. What do we do if there's two purposes? The other side seems to say, well, as long as there's one legitimate purpose, it's fine. And I'm just curious what your response is to that. Well, this court has also actually addressed that issue before in at least two cases, Sierra Club v. Clark and Castano v. the Nebraska Department of Corrections. And the court has said that testimony given at hearings should not be accorded undue weight as an indication of legislative intent because the views expressed by witnesses are not necessarily those of the legislators who voted on the bill. We also have the text of the bill itself. There's nothing on the text that's apparent in the text of the bill that evidences any intent to benefit farmers. You're still not answering my question. If there's two purposes, suppose we conclude there's two purposes, who wins here? Certainly. One legitimate and one illegitimate. The illegitimate, it's a question of weighing the evidence. What was the evidence in the record? And clearly, under Janclow, the burden of proof based on the evidence was on the state and Indita. And they had to come forward with compelling evidence that the purpose was the legitimate purpose. They didn't meet that burden. Indita didn't submit anything other than the affidavit. After the fact, after the hearing, the state did cite the 137 pages, but the state's arguments were all related to leveling the playing field. So in this case, they didn't meet their burden. They had the burden of proof. And the district court's weighing of the evidence ought not be disturbed, especially not at the preliminary injunction stage, unless it wasn't plausible. And certainly, given what the bill says, what the sponsors said, the quantity and quality of statements before the various committees and on the floor, that all suggested the improper purpose of leveling the playing field. And in that respect, the case is also like Branstad. There was testimony and argument in that case that besides remedying alleged abuses and franchising, the purpose was to benefit the economy. But the district court in Iowa didn't buy it, and neither did this court on appeal. Wouldn't it be pretty difficult to find a piece of legislation that had only one legislative purpose? It would be, Your Honor. And certainly, one could argue that because farming is important to the economy, anything, and this is the argument the other side is making, because farming is important to the economy, anything that benefits any player in that economy benefits the overall economy or benefits society. But, you know, this is not broad legislation. And to see that and to see the dramatic change that it makes to the statute, the court needn't look only at the text of Senate Bill 2289 itself. It's in the joint appendix, pages 78 through 82. It's four pages, and it's in the form of a red line. Most of the four pages is new, and it also strikes some important provisions as well. It strikes, for example, the provision under the prior statute that the statute didn't apply retroactively. And in every respect, this bill could not be more unlike the prior version of the statute. We heard about, for example, the decision of the North Dakota Bankruptcy Court in Farmers Union interpreting a prior provision of the statute. In that incarnation, the statute simply said upon termination, a manufacturer has to repurchase unsold inventory of parts. The Bankruptcy Court in North Dakota said that's not even a substantial impairment. So the court didn't even need to reach the second issue, which was whether there was a legitimate public purpose here. Can you elaborate? What is it about the text of the statute itself that you think shows a narrow, private sort of purpose? Well, one is that all that it does is regulate the terms and conditions of equipment dealer statutes. This is not legislation that has some incidental effect on equipment dealer agreements. It's directed at the terms of equipment dealer agreements. It tries to rewrite them after the fact. And it certainly was not foreseeable for several reasons that the legislature would do this. Not on foreseeability. Not on foreseeability. Purpose, because it seems an odd rule. Maybe this is the law and the way it's developed, but that if this sponsor had just come in and said, well, I know what the Eighth Circuit did in Janclow, and so I'm going to broadcast a different purpose in order to get this through constitutionally, that that would make a difference in the case, even though it's the same exact legislation and the same exact coalitions supporting and opposing it. So I'm wondering if there's some better way to address these cases than to look to what legislators say on the House or Senate floor. And that would create a loophole that you could drive a John Deere tractor or a Case IH tractor through. No, but I thought that's the loophole you're advocating for. You're saying, well, because he said what he said here, we win. But if he'd said the other, we would lose. I'm certainly not advocating for that. And the history of this statute also shows that it was actually written by the equipment dealers for the benefit of the equipment dealers. And when they intervened, they told the district court that the purpose was to level the playing field. They thought better of that after the fact. But the legislators, other than voting on it, had nothing to do with drafting it. I mean, there might be a- You mean there's record that shows the interest group just presented it to the legislators? That's correct. They drafted it, and they said that it was unlike any other statute before. And they were right. In this case, there are 13 provisions that the manufacturers have challenged. There's only one counterpart to that in the prior version of the statute, and that has to do with the level of warranty reimbursement. Under the prior version of the statute, it did not violate the statute to enforce the terms of the agreement. In fact, enforcing the terms of the agreement was good cause for termination. All the prior statute said was that a manufacturer could not coerce a dealer to do something. And in that respect, the statute was like the prior version of the South Dakota statute at issue in Janclow, except that the South Dakota statute made it a crime to coerce. Here, it was simply a civil provision. This court's precedents are clear, including Minnesota Supply, that merely enforcing a contractual provision is not coercion as a matter of law. So this legislation completely rewrote the statute. It especially was not foreseeable under Janclow because four of the five plaintiffs in this case, the predecessors of AEM, AGCO, CNH, and John Deere were all plaintiffs in Janclow. The only new plaintiff here is Kubota. It certainly was not foreseeable that the North Dakota legislature would ignore this court's contract clause precedent and write a statute that directly contradicted it. Suppose that we disagree with you and you don't have much time left, so I want to address the alternative that I was speaking with opposing counsel about. Suppose we disagree with you and we think you don't win on the contracts clause, that we need to send this back. What then? Do you still win? Do you lose overall? Do we affirm the preliminary injunction? Do we reverse it? The preliminary injunction should still be affirmed on a couple of grounds. One is that the state and NDTA have not appealed the court's ruling on Federal Arbitration Act preemption, and on that basis alone, the preliminary injunction can and should be affirmed as is. Your Honor referenced a severability or a blue pencil statute in North Dakota, but that applies only upon a judgment. There's been no judgment here. This is simply a preliminary injunction. So the time to blue pencil or sever, if ever, would not be now. It would be upon the conclusion of the case. But this case begs, you know, this is one of the hard – I mentioned the MKB case from our court in 2015. This kind of begs for severance, right? You have the Federal Arbitration Act really applying only to the one arbitration provision in the legislation. Everything else has nothing to do with arbitration. So it seems silly, I guess, not to sever the arbitration provision from the rest of the statute. Well, except that virtually every other provision of the statute has been challenged on other grounds, including the Lanham Act. And the Lanham Act preemption argument was extensively briefed at the district court level. There were three rounds of briefing involving the state and then INDATA and nine dealer associations from around the country who rallied to the defense of this statute. And the district court didn't decide that because it wasn't necessary. But there are plenty of other grounds for finding the statute unconstitutional and or preempted. And, of course, preemption is a constitutional issue as well under the Supremacy Clause. And it would wreak havoc and it would be, as a practical matter, impossible to unscramble the eggs if for a period of time these contracts were unenforceable and dealers could enter into new arrangements, allowing them to bait and switch and sell a competitor's products under, you know, the John Deere trademark, the Case IH trademark, the Kubota trademark, whatever, while the merits are decided. I see that I have three seconds, two seconds left. Let me ask a question. You can't answer it in three seconds, but maybe it will be a pretty quick answer. And just for clarification, for my benefit, do you have a case, have you cited a case, or is there a case out there that you know of that suggests it's appropriate for a court to value some legislative history over other legislative history when attempting to ascertain a legitimate and significant public purpose? Well, there are certainly cases saying that these minutes are not legislative history at all and that they're not accorded any weight, and those include the cases that I cited earlier, including Sierra Club versus Clark out of this court. It's not a committee report, and there is a ---- What about the legislative history? You said that's not legislative history. What about in the universe of legislative history with respect to a piece of legislation? Is there a case that says the court can value some legislative history over other? Yes, or certainly by implication. I'm not sure there's a case that directly holds that, but the Supreme Court precedents like Corley versus United States and this court's decision in Southern Wine and Spirits say that a sponsor's statement to the full body is compelling evidence of legislative intent. This was an evidentiary question, and again, the state, and indeed it had the burden of proof, they didn't come forward with compelling evidence, and under Janklow and other contract clause precedents, their burden is higher the more substantial the impairment, and this was a very substantial impairment as the district court found and this is evident on the face of the case. But I can't cite you a case that precisely says what Your Honor is asking. When you say the minutes are not legislative history, you say there are cases that say the minutes are not legislative history. Is that what you say? The minutes are not legislative history. They're not a committee report the way the U.S. Congress would produce. They're not legislative history the way the state of New Hampshire produced one, and they're not even accurate. I'm not familiar with the Sierra Club case. Was that a case about what a statute means, and the court was looking at whether to give any weight to the minutes in deciding the using of a statute? Yes. In fact, what this court said was that mere testimony given at hearings, that's a quote, and this is a continuation of the quote, should not be accorded undue weight as an indication of legislative intent. And similarly, in the Castano case, this court was a year 2000 case. This court rejected the use of what it called snippets of legislative history, close quote, as indicators. Okay. Thank you. You're welcome. Thank you. Mr. Allen, we'll hear from you in rebuttal. Thank you, Your Honors. Your Honors, I'm not aware of a single case that says that a court sits to weigh legislative history evidence, use tally marks, figure out who had more on one side or more on the other. The U.S. Supreme Court is clear that courts don't second guess the empirical judgments of lawmakers concerning the legislation. The judiciary does not sit as a super legislature to weigh the wisdom of the legislation. In fact, we don't even have to go to the U.S. Supreme Court. We have the Eighth Circuit decision in Janclow, again, where they looked at, and I just would quote, the state has produced no evidence of harm. We would credit, we would be compelled to uphold the act if we credited the state's rationale for the act. But they produced no evidence of harm to be avoided. And then finally, this court said, without evidence of a significant and legitimate public purpose, the statute is void. Why shouldn't we have a rule that says if the state impairs contracts in this way, that the legislature has to be more clear? It can put it right into the statute. This is the purpose of the statute. Here are some findings. Here's the purpose. Your Honor. Rather than have the court digging through these minutes and trying to say, well, was the sponsor's purpose really the purpose, or was it what some witness said, or what some interest group wrote a letter about? What's wrong with that rule, saying if the legislature wants to substantially impair contracts, the Constitution says you can't impair contracts? They've got to be more clear. Respectfully, Your Honor, I believe that would present a large separation of powers issue with a federal appellate court directing a state legislature as to how to codify intent. So I don't disagree that it would be more clear and that we likely wouldn't be. It's more of a federalism problem, I think, than separation of powers. But it's an interpretation of the Constitution, which is what the courts are charged to do. Well, moving forward, Your Honor. It's a possible interpretation. Yes, Your Honor. Moving forward, if that is the court's desire to make these issues more clear, and so we're not wading through the legislative history. However, the legislative history has been, contrary to Mr. Lockerbie's statement, the state of North Dakota credits these committee minutes as legislative history in determining purpose time and time and time again. Is it a state law question or a federal question? I mean, that's one of the things I'm struggling with. The treatment of legislative history, do we follow the Supreme Court cases or do we follow the North Dakota cases? Well, as it relates to the specific committee minutes themselves, Your Honor, respectfully, I believe it's a state law question. These are state documents that are the official legislative record. There's no dispute that they're the official record and who maintains them and how they're maintained and that the North Dakota Supreme Court cites these time and time and time again. Now, the question is, and I understand kind of the bifurcation here, is that somehow different than how every other court in America interprets legislative history? The answer is no. We look at what is in the record and does it support the state's stated purpose. It's not do we take an isolated comment from a floor speech where there's not even question and answer debate and ascribe that to the entire legislature. It's do we look at it, is there evidence of support, and we move on. And finally, Your Honor, I see that I'm out of time. Go ahead and make your final statement. Yes, Your Honor. I would like to point out that the arguments that appellees are making here for the contracts clause would foreclose, moving forward, would foreclose the readjustment of rights, retroactive application altogether. Because what that does is when there's a retroactive application and a readjustment of rights, there is a single beneficiary. There could never be a legitimate purpose under their argument after that. They are asking this court to say if there's a single beneficiary, you are foreclosed from finding there's a legitimate purpose. And that's exactly where the district court erred. The district court stated that's not necessarily true, though. You could have this legislation is aimed at a single interest group or a single set of dealers. If you had a general provision that retroactively changed contract rights for everyone without pointing at anyone, saying, for example, you'd have FAA problems, but saying arbitration provisions need to be a particular way, but it applied across the board, there wouldn't be a single set. That would be everyone in the state, wouldn't it? Absolutely. I don't disagree as far as the broad application there. I'm speaking as it relates to specific items and specific industries that legislatures consider altogether. I'd like to read the quote from the district court order that got this. I gave you a chance to make your final point, so don't overdo it. Go ahead. What quote do you want to read? Laws which directly alter the obligations and expectations of contracting parties cannot be described as general social legislation. They quote Whirlpool. That's not what Whirlpool says. That's Apley's argument, and it's incorrect. Thank you, Your Honor. Okay. Thank you, Mr. Allen. The case is submitted, and the court will file an opinion in due course. Thanks to all counsel.